Bortz Coal Company *v.* Department of Environmental Resources.

Argued December 5, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Fred C. Adams,* with him *Coldren & Adams,* for appellant.

*K. W. James Rochow,* Assistant Attorney General, with him *Michael Alushin,* Assistant Attorney General, and *Anthony P. Picadio,* Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, January 22, 1973:

This is an appeal from an Order, dated June 12, 1972, of the Environmental Hearing Board (Board) reinstating and amending an Order of the Air Pollution Commission[1] in which the Bortz Coal Company (Bortz)

---

[1] The Air Pollution Commission and parts of the Department of Health were combined and transferred in the new Department

was ordered to operate its beehive coke ovens, at its Smithfield Coke Plant located in Fayette County, in such a manner that emissions from its ovens do not exceed the limits set forth in §1.3(1) of the Air Pollution Commission Regulation IV. The Order also directed Bortz to submit a plan for such operation by August 1, 1972.

This is the second time this case has been before this Court, and the subject Order of the Board is the result of a remand order issued by this Court on July 9, 1971. For a proper understanding of the holding of this Court in this case, it is essential that the reader refer to our prior Opinion and Order at *Bortz Coal Company v. Commonwealth,* 2 Pa. Commonwealth Ct. 441, 279 A. 2d 388 (1971), for the reason that everything we said there is affirmed herein without reiteration and said Opinion and Order are made a part hereof by reference thereto.

The records made at the original hearing and remand hearing revealed that Bortz has owned and operated approximately 70 beehive coke ovens at its Smithfield Plant for about 50 years. The ovens were built in 1898 and have been in operation since that time. For the past eight or nine years, the Commonwealth's air pollution authorities have been in contact with Bortz concerning the emissions of smoke and particulate matter from the ovens, the culmination of which resulted in various orders of the Commission ordering Bortz to comply with the rules and regulations of what is now known as the Department of Environmental Resources (DER). We remanded the case back to the Commission because of our holding that the Commission had not proven the alleged violation by substantial evidence. The record in the original hearing indicated that the

of Environmental Resources, by the Act of December 3, 1970, P. L. 834, Act No. 275, 71 P.S. §§510-1 et seq.

Commission's experts had merely made visual observations of the smoke plumes coming from the ovens, while the record indicated that there were acceptable and well-recognized scientific tests available. We there held: "Visual tests and observations are not adequate evidence of a violation where recognized scientific tests are available. . . . This Court cannot close its eyes to the necessity of a regulatory agency proving its case. . . . [W]here there are available established methods for determining violations, those methods must be used." 2 Pa. Commonwealth Ct. at 458-459, 279 A. 2d at 398. No appeal was taken from this Court's remand Order.

Subsequent to the original hearing, the Environmental Hearing Board, mandated by Act No. 275, was instituted and organized and the remand hearing was held before P. E. Waters, Esq., one of the three members of the Board, sitting as a Hearing Examiner. (See 71 P.S. §510-21[f]) At the remand hearing, DER presented evidence through the testimony of four employes of DER, who qualified as experts in their respective fields under the general heading of Air Pollution. Unlike the original hearing, DER presented substantial evidence of air pollution caused by the emissions from Bortz's coke ovens, as measured and determined by the use of a recognized scientific testing device known as a Ringelmann Chart.[2] Although DER presented additional testimony concerning the reasons why other tests were not practical, including what was commonly referred to as a material balance procedure (whereby input and output statistics were matched with published federal charts), none of this evidence was utilized by

---

[2] The Commonwealth experts not only used the Ringelmann Smoke Chart, they also used an MSA Smokescope and a Plibrico Smoke Chart in their determination that the smoke plumes from the Bortz coke ovens were in violation of §1.3(1). Unlike the evidence produced at the original hearing, DER has now more than adequately proven its case.

the Board; and therefore they will not be discussed in this Opinion. The record shows that Bortz did not effectively refute any of DER's presentation insofar as it referred to the tests made with the Ringelmann Chart.

Bortz has presented to us three of the same constitutional issues which it presented to us at the prior argument, namely,

1. Does the Air Pollution Control Act, Act of January 8, 1960, P. L. 2119 (1959), as amended, 35 P.S. §§4001 et seq., constitute an unlawful delegation of legislative authority to the Air Pollution Commission and Department of Health (now under DER)?

2. Will the enforcement of the rules and regulations of the Commission constitute a confiscation of property without due process of law in violation of the Constitutions of the United States and Pennsylvania?

3. Does the Air Pollution Control Act constitute an unlawful discrimination in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution and Art. III, §32 of the Pennsylvania State Constitution?

We will not reiterate all that we said in *Bortz Coal Company v. Commonwealth, supra,* except to say that we affirm our prior holding that neither the Act nor the rules and regulations of the Commission violate any of Bortz's constitutional rights.

The only other issues raised by Bortz are whether the evidence presented by DER is sufficient to establish a violation under the Act or the rules and regulations of the Commission, and whether the action of DER was arbitrary and capricious.

Our review of the record made at the remand hearing permits us to conclude that DER has presented substantial evidence of a violation of §1.3(1)[3] of Regu-

---

[3] Section 1.3(1) has been superseded by DER, but the new (and more stringent) rule is not applicable to this case.

lation IV of the Rules and Regulations of DER, which reads as follows:

"Limits for Particulate Matter Emissions.

"In the absence of a determination by the Commission imposing more stringent or less stringent limits, as provided for in Section 1.4 of this regulation, a local air pollution problem shall be deemed to exist: (1) If any person causes, suffers, allows or permits smoke from any combustion unit, the shade or appearance of which is darker than No. 2 of the Ringelmann Smoke Chart, to be emitted into the outdoor atmosphere. Exception: Smoke emitted during the cleaning of the fire box or the building of a new fire may be darker than No. 2 of the Ringelmann Smoke Chart for a period or periods aggregating not more than six minutes in any sixty consecutive minutes." Bortz has in no way attacked the reasonableness of this regulation. Bortz has not offered any evidence that §1.3(1) is in any way technically unclear, unreasonable or unknown to Bortz. The record establishes that DER presented evidence through a qualified expert in air pollution who used the available and recognized scientific equipment to test the emission of smoke from Bortz's coke ovens and the unrefuted conclusion that these tests indicated a violation of §1.3(1) of the rules and regulations of the Commission. Therefore we conclude that the Board did not abuse its discretion or commit an error of law.

Bortz also contends that DER acted in an arbitrary and capricious manner in failing to acquiesce to the Bortz request that it be given an additional three years to phase out its coke ovens for the reason that Bortz apparently has conceded that it cannot bring the ovens within the acceptable standards of emission under the rules and regulations of DER. As we stated in the prior *Bortz* case, *supra*: "As is clearly shown in the order of the Air Pollution Commission from which this appeal

arose, there is power in the Commission to set time limits within which compliance with the Commission's orders may be set. It is conceivable that economic factors could very well persuade the Commission to set a deadline at some time different than it would otherwise set it without such information. . . . [I]t is conceivable that economic factors could be very relevant to the Commission for it to properly carry out the legislative intent. This is not to say that the Commission must give weight to the economic factor evidence. We do say, however, that without such evidence, if it has been offered, the Commission cannot fully carry out the legislative intent." 2 Pa. Commonwealth Ct. at 460-461, 279 A. 2d at 399. In the remand hearing, Bortz was permitted to offer such economic evidence. It is apparent from a reading of the well-written adjudication of the Board[4] that the economic evidence presented by Bortz was not persuasive. The Board did not abuse its discretion in refusing to grant Bortz the additional time it sought to phase out its operation. As we stated in the prior Opinion, no matter how sympathetic we may be to Bortz and the economic loss to the employes of Bortz, we are bound by the law established for us by the Legislature.

Therefore we are left with no other alternative but to affirm the Order of the Board. However, the Order directed Bortz to operate its coke ovens in accordance with §1.3(1) on and after September 1, 1972, and re-

---

[4] The only reservation we have with the Board's adjudication is its reference to a California case wherein there is an inference that visual observations without the use of the available and recognized scientific testing equipment may present substantial evidence. Counsel for DER insists that such evidence should be considered substantial evidence. Notwithstanding what the California or Oregon Courts may have said, the law in this State is as was established in the prior *Bortz, supra,* Opinion, until changed by the Legislature or by our Supreme Court.

quired Bortz to submit a plan by August 1, 1972, outlining the procedures which would be used to achieve compliance. These two dates must be extended to a reasonable time, which we hold to be sixty days each, from the date of this Opinion. We remand this case back to the Board for the sole purpose of amending its Order so as to extend the two said dates.