(Nos. 23227, 23228.—

PAUL RESCHKE *et al.* Appellants, *vs.* THE VILLAGE OF WINNETKA, Appellee.

*Opinion filed May 12, 1936—Rehearing denied June 12, 1936.*

WILSON, J., dissenting.

Royal J. Schmidt, and William N. Brady, for appellants.

Tolman, Chandler & Dickinson, (Frederick Dickinson, and Alex Elson, of counsel,) for appellee.

Mr. Justice Farthing delivered the opinion of the court:

Paul Reschke and A. G. Erikson, appellants, filed separate complaints in equity in the Cook county circuit court to restrain the village of Winnetka from prosecuting certain suits and from interfering with the respective uses appellants were making of the real estate owned and occupied by each of them in that village. Both complaints attacked the reasonableness of the zoning ordinance of appellee in its application to the property of the appellants. The village contended that appellants were using their real estate in a way forbidden by the zoning ordinance, and it filed a counterclaim in each suit and asked that the appellants be enjoined from continuing such use. In the two separate decrees the court found the zoning ordinance to be reasonable and that appellants were violating its terms. The complaints were dismissed and injunctions were issued in accordance with the prayer of the counterclaims. In each of the cases, the trial judge certified that the validity of a municipal ordinance was involved, and that in his opinion, the public interest required the appeal to be prosecuted directly to this court. The two appeals have been consolidated for hearing.

The village had begun several proceedings and threatened to institute others against each appellant for alleged violations of its zoning ordinance. The appellant Reschke lives in a single-family dwelling on his property. He also

stored on such premises paving materials, machinery and equipment.

A. G. Erikson also lives in a single-family house on his lot, and stored six light delivery trucks in his garage. He operated a delivery service from his home. The appellee says that such uses are forbidden upon property which is zoned for single-family residences by section 3 of its zoning ordinance.

Winnetka is located approximately eighteen miles northwest of Chicago on the shore of Lake Michigan. It is predominantly residential in character. It adopted a zoning ordinance on January 17, 1922. The five districts created by the ordinance included all the property in the village. Only single-family residences were allowed in the "A" (⅙ acre) and "A" (½ acre) districts. Two-family apartment houses were permitted in the "B" residence district, certain commercial uses in the "C" commercial district, and certain industrial uses in the "D" industrial district.

The two pieces of property in question abut Center street on its west side in the block between Pine street on the south and Westmoor Road on the north. Center street was formerly known as Railroad avenue. When the zoning ordinance was adopted the street had a 20-foot brick pavement which was in poor condition. It was not a through highway. The planning commission, appointed before the ordinance was adopted, recommended that this street be widened, paved and connected up in such a way as to create a continuous highway through Winnetka, from north to south, to which heavy traffic might be diverted from streets in the residence districts. This recommendation was followed. The through highway was constructed and Center street was improved with a 40-foot concrete pavement. This was the last link and it was completed in 1931. This highway extends from Chicago through Evanston, Wilmette, Kenilworth, Winnetka, Glencoe, Highland Park and north along Lake Michigan. Sheridan Road is

the only other through highway. It is winding and only pleasure cars are permitted to use it. Both trucks and pleasure cars are permitted on Center street and the traffic there is heavy. Traffic counts taken in March and April, 1935, between 7:00 A. M. and the same hour in the evening, showed from 730 to 1250 vehicles passed along Center street every hour.

Power and other lines are strung along the east side of the pavement on Center street. The right of way of the Chicago and Northwestern Railway with two main tracks, a switch-track and a team-track, adjoins the street on the east. On week days 69 passenger trains pass in front of appellants' property daily. Freight cars are placed on the team-track where they are unloaded with trucks. This is the only distributing point for freight in the village. There is a pavement alongside of this team-track, which connects with Center street. Adjoining this right of way on the east are the right of way and tracks of the Chicago North Shore and Milwaukee Railroad. Over these tracks 143 electric trains pass daily, except Saturday and Sunday, when the numbers are 127 and 77 trains, respectively. East of the electric railway's right of way, lies a tier of lots facing Foxdale street which parallels the right of way a half block to the east.

North of Cherry street, which is in the south part of Winnetka, there are three blocks on both sides of Center street which are zoned in a "C" commercial district. From there north, the property east of the railroads is zoned as "A" (⅙ acre) residence district.

Spruce street runs into Center street and is the north boundary of part of the commercial district already mentioned. North of Spruce street the property on the west side of Center street for one block,—that is, to Pine street,— and for a distance north beyond Pine street of 652.5 feet, is zoned as a "D" industrial district. The remainder of the property in the block between Pine street and Westmoor

Road lying on the west side of Center street, is zoned as "A" (⅙ acre) residence property. This includes the property of both appellants. The next two blocks on the west side of Center street are in the "A" (⅙ acre) residence district, and from Chatfield Road to the northern village limits, lies another "C" commercial district, on the west side of Center street.

The 252.5 feet on the northwest corner of Pine and Center streets is occupied by greenhouses, and there is also a brick building containing the office and sales-rooms with flats above; the next one hundred feet to the north is used as a coal yard. The next fifty feet is occupied by a two-story garage and office building; the next fifty feet is improved with a garage, with living quarters on the second floor; the next one hundred feet is improved with a garage, automobile sales-room and filling station, and the next two hundred and nineteen feet is the village yard. This consists of a building, sheds and an open area surrounded by a twelve-foot wall. In this yard trucks, tar-wagons, paving and building materials are stored. It also contains the police revolver-range and the dog pound. The south one hundred feet of this yard lies within the "D" industrial zone and the north one hundred and nineteen feet is in the "A" (⅙ acre) residential district. The one hundred and fifty feet north of this yard contains three one-family residences. The appellant Reschke owns the next eighty-one feet and the appellant Erikson owns the adjoining fifty feet. The fifty feet north of Erikson's property has on it a one-family residence and a paint shop, the latter being a non-conforming use. The next one hundred feet has two residences with garages; the next one hundred feet is devoted to the non-conforming use of a stone yard. It also has on it a residence and two-story garage. The next one hundred and fifty feet is also devoted to a non-conforming use as a florist's retail shop, with two rows of greenhouses, hot beds, an office and a frame building containing the boiler-

room, with living quarters above. There is a sign on the premises advertising the business. The last one hundred feet in the block is occupied by two residences. There is no alley in the rear of the lots facing Center street, and they abut directly on lots facing Walden Road, which bounds the block in question on the west. There is a row of trees along the rear line of appellants' properties. The residences erected on Walden Road are of a more expensive type than those facing Center street, and range in cost from $12,000 to $50,000. There are twelve single-family dwellings between the village yard and Westmoor Road. Five are occupied by tenants, and seven by the owners. Four of the latter seven are put to non-conforming uses, which are permitted, because they were so used before the village zoning ordinance was passed.

All the industrially zoned real estate fronting on Center street is in use. Two parcels face Pine street and are improved with old frame residences. They constitute the only land in "D" industrial district which is not used either industrially or commercially. Because these parcels do not front on Center street and are not adjacent to the railroad, they are, therefore, not particularly desirable for industrial uses.

The record contains much evidence as to the relative value of appellants' properties according to the use to which they could be devoted. It fairly tended to prove that the value of these properties when restricted to residential purposes is from $20 to $40 per front foot. If they could be legally used for commercial purposes they would be worth from $100 to $125 per front foot, and $150 to $175 per front foot for industrial uses. Expert witnesses testifying for the village were of the opinion that Winnetka, which is predominantly residential, will never become an industrial community; that it needs but a small amount of industrial property; that a change in use of appellants' property to industrial from residential would

adversely affect adjacent residential property between Pine street and Chatfield Road; that a general re-zoning as industrial property would admit objectionable uses, such as milk distributing stations, and cleaning and dyeing works; that in their opinion the property from the village yard to Chatfield Road should not be re-zoned, because there was no necessity for enlarging the commercial or the industrial area. It appears that only .7 of an acre of land has been absorbed for industrial purposes since 1921, and that only 7.1 acres in the village are zoned for industrial uses, as compared with 1093.6 acres used for single-family residences. There is testimony that the residential property along Center street is the lowest class of property in the village. Before the zoning ordinance was adopted the persons who were interested in developing the property along Walden Road built the houses along Center street to arrest the spread of industry northward along that street.

The testimony was conflicting as to whether the property on Walden Road would be damaged. Witnesses for appellants' stated there would be no reduction in value, because whatever reduction there would be had already taken place on account of the non-conforming uses previously mentioned, and the yard established by the village after the ordinance was adopted. Witnesses for appellee testified that the value of Walden Road property would be affected adversely anywhere from twenty to thirty-three per cent.

A real estate expert testified for appellants that the "A" (⅙ acre) residence district should be re-zoned, and that a re-zoning of the property of that district would not have any adverse effect upon the health, safety, morals and general welfare of the people of Winnetka. Harland Bartholomew, a zoning expert, testified for appellee that the present restrictions in that district have a very beneficial effect upon the north end of the community by reason of maintaining the present character of the territory. He stated that if

this district were zoned and developed for industrial purposes, it would increase the density of building development and, in cases of some industries, would cause additional noise, increased traffic, and materially affect the general welfare of all the residential property in that area. The witness Jacob L. Crane, Jr., a zoning expert, was also of the opinion that re-zoning the appellants' property would injuriously affect the adjoining properties and the health, safety, morals and general welfare of the village.

. Summarized, the appellants' contentions amount to this: The zoning ordinance of Winnetka, in its effect upon appellants' real estate, is unreasonable and results in the taking of their property without due process of law and without just compensation, in violation of the fourteenth amendment of the Federal constitution and section 2 of article 2 of the Illinois constitution of 1870. It is unreasonable, they say, because it destroys three-fourths of the value of their property, without any substantial justification therefor, in conservation or furtherance of the public health, safety, morals or general welfare.

The right and power of cities and villages to adopt zoning ordinances is established. (*City of Aurora* v. *Burns,* 319 Ill. 84.) If the restrictions thereby imposed are considered either doubtful or fairly debatable, courts should not substitute their judgment for that of the legislative body of the particular municipality. (*Village of Western Springs* v. *Bernhagen,* 326 Ill. 100; *Minkus* v. *Pond,* id. 467.) But an ordinance or statute which places new burdens and restrictions on rights of citizens in the use of their property, must have a direct relation to the public health, comfort, safety, morals or general welfare, otherwise such legislation cannot be sustained. *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213; *State Bank and Trust Co.* v. *Village of Wilmette,* 358 id. 311; *Tews* v. *Woolhiser,* 352 id. 212; *Forbes* v. *Hubbard,* 348 id. 166.

In determining whether the invasion of property rights under a purported police power, is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance must be given consideration. (*State Bank and Trust Co.* v. *Village of Wilmette, supra; Forbes* v. *Hubbard, supra.*) The reasonableness of the ordinance is necessarily determined by the facts in the particular case. *Tews* v. *Woolhiser, supra.*

We held the zoning ordinance unreasonable and void in *Ehrlich* v. *Village of Wilmette, supra.* There the property owner had obtained an injunction restraining the enforcement of the ordinance. His property was zoned as residence property but the north half of the same block was zoned as "B" commercial. A cab stand and the Chicago Rapid Transit Company's tracks were directly opposite and across the street from his property. There was heavy traffic on the street in front of his property, and there was other commercial property half a block to the north. As residence property his lot was worth $50 per foot and as commercial property $350 to $400 per foot.

In *State Bank and Trust Co.* v. *Village of Wilmette, supra,* property owners obtained a decree declaring void a zoning ordinance and its amendments, and enjoining the village authorities from enforcing it in so far as the ordinance tended to prevent such owners from constructing a public garage, oil and gasoline filling station and pumps on their property at the corner of Main street and Lake avenue in the village. Main street was parallel with and adjacent to the right of way of the Chicago and Northwestern Railroad, and the traffic on it was heavy. The property was zoned as "B" commercial and there were other garages in that district. We affirmed the decree and held that there was no rational ground for excluding garages and filling stations from the "B" commercial district.

We also held the zoning ordinance arbitrary, unreasonable and void as applied to the property zoned as "A"

($\frac{1}{6}$ acre) residence property in *Tews* v. *Woolhiser, supra.* That property was a single tract, triangular in shape, lying between Center street and the railroad right of way, on the south side of Winnetka avenue in that village. The property on the nearby street corners was zoned, or used, for commercial purposes.

In the case before us the appellants' two pieces of property front on Center street. They are on the opposite side of this much-traveled highway, from the rights of way of the two busy railroads. The steam road maintains a team-track and a switching-track where all the freight to be unloaded in Winnetka is discharged. In the same block with the property of appellants is other property zoned as industrial, or that does not conform to residential use, and which is used for industrial and commercial purposes. The village yard was established in this block on property zoned in part for industry and in part for residences, some years after the zoning ordinance was adopted. Center street had been improved, and the traffic on it had become much heavier in front of the appellants' property, after the zoning ordinance became effective.

For residence purposes appellants' property was worth from $20 to $40 per foot but for commercial purposes it would be worth $125 per foot, and for industrial uses, $150 to $175 per foot. We are of the opinion that this record fails to show that any appreciable damage would result to other residence property in the neighborhood, if appellants were permitted to use their property in the manner sought by them in their respective complaints. The property zoned and used for industrial purposes, in the same block, together with that which was used for non-conforming purposes, when the ordinance was adopted and the village yard since established, have already caused almost all the damage that may be expected from such uses. There is no merit in the contention that the use of these two additional tracts will work further damage to the property on the west side of

the block, fronting on Walden Road. In *Forbes* v. *Hubbard*, 348 Ill. 166, 177, we said: "It is clear from the undisputed evidence in this case that appellee's property is not characterized by the residence area lying west of it but rather by the business district which it faces." The same is equally true of appellants' property. The railroads in front, the non-conforming property in the north, and the industrially zoned and non-conforming property in the south part of the same block, make the zoning ordinance unreasonable, confiscatory and void, if permitted to restrict the appellants to a residence use of their property.

We have examined the cases relied upon by appellee but find the facts to be so much at variance with the facts here that those decisions are not in point. As we have already pointed out, the question of reasonableness of a zoning ordinance depends upon the facts of the particular case.

In the view we take it is not necessary to pass upon the contention the appellants make that the ordinance is void for the reason that it excepts public utilities and the village of Winnetka, itself, from the restrictions it contains.

For the reasons indicated the decrees of the circuit court of Cook county are reversed and the causes are remanded to that court with directions to render decrees enjoining the village of Winnetka and its officers from interfering with the conduct by the appellant Paul Reschke of a contractor's plant or storage yard upon his premises, and enjoining the village and its officers from interfering with the conduct by the appellant A. G. Erikson of a carter's express, hauling or storage yard on his premises.

*Reversed and remanded, with directions.*

Mr. JUSTICE WILSON, dissenting:

I am unable to concur in the foregoing opinion. The village of Winnetka is pre-eminently a residential district. The only business activities within its confines are those which relate entirely to the needs of its inhabitants. The

few industries are only such as are necessarily incident to such a purely residential community, and there are no manufacturing plants. The right of such communities to pass zoning laws has become fully recognized by the law. Courts should not substitute their judgment for that of the governing agencies of a village or town in respect to its rights to zone districts for purely residential purposes. Such zoning ordinances are based upon the rights of the inhabitants of the village to enact laws bearing a substantial relation to the public health, comfort, safety or general welfare of the community. Coupled with this right should be the power to provide for residents an opportunity to build homes without fear of industrial invasion.

The appellants in this case purchased the premises with full knowledge of the zoning ordinance. This court, however, has held that they were entitled to the rights of the grantor from whom they purchased, but, at the same time, one who purchases land with a restriction in favor of other residents in the same district should not use such property in a manner that would injure those similarly situated. Money consideration should not be a controlling factor in zoning cases. The main purpose of a zoning act is to furnish quiet enjoyment for home purposes, and this should be paramount to one purely commercial. The modern tendency appears to be to clothe the governing body of a community with the right to do those things necessary for the protection of all its citizens and not for the individual. It requires a clear and strong case to justify a court in annulling the action of a municipal corporation providing for the peace and quiet of its citizens in their homes and to encourage the erection of residential buildings in the community. (*Village of Western Springs* v. *Bernhagen,* 326 Ill. 100.) The encroachment of commercial business in a residential district already zoned is conducive to chaos. The adjoining property immediately becomes worthless for residential purposes and the whole structure crumbles.

The fact that the tracks of the Chicago and Northwestern railway extend the length of this zoned property is no good reason in support of the finding of the court. This railway system is used for transportation to and from Chicago, and, together with the switch-track in question, was in existence when the zoning ordinance was passed and when appellants purchased. The switch-track is seldom used, and the entire line runs over its own right of way between two well kept-up public thorofares and many feet from the residential property on either side.

From the facts in this case I find no encroachment in the restricted district such as to substantiate the view of the appellants that the purpose of the ordinance had failed, and that, therefore, the property in question should be released from the restrictions of the zoning ordinance.