DeCoals, Inc.

*v.*

Board of Zoning Appeals of
City of Westover: Francis Teter, *etc., et al.*

(No. 14568)

Decided December 2, 1981.

*Steptoe & Johnson, Susan S. Brewer* and *Robert M. Steptoe, Jr., Haden & Heiskell and Charles H. Haden* for appellant.

*Solomon & Solomon and David L. Solomon* for appellees.

HARSHBARGER, CHIEF JUSTICE:

DeCoals, Inc. asked us to reinstate its building permit that was rescinded by the Board of Zoning Appeals of Westover, Monongalia County.

In 1976, Westover's mayor approved DeCoals' application for a permit to construct a coal tipple on its "industrial" zoned Monongahela riverside property, in which zone another tipple has operated for many years. DeCoals had previously received permits from the West Virginia Department of Natural Resources, West Virginia Air Pollution Control Commission, Department of the Army Corps of Engineers, and the City of Morgantown (Morgantown is across the river from DeCoals' property). Citizens' from a neighboring residential area appealed their mayor's action to the board, claiming they would be adversely affected by dust, noise and property devaluation; and by a 3 - 2 decision, after a hearing, that board rescinded the permit. DeCoals' writ of certiorari to Monongalia County's circuit court was granted, but that court affirmed the board's decision that DeCoals could not meet Westover zoning ordinance performance standards.

West Virginia Code, 8-24-55, empowers a board of zoning appeals to "(1) [h]ear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or rule and regulation adopted pursuant to sections thirty-nine through forty-nine [§§ 8-24-39 to 8-24-49] of this article". Westover's zoning ordinance authorizes its mayor to enforce this law, Westover Zoning Ordinance, §20, and "[a]ny decision of the Mayor in enforcement of this ordinance may be appealed by any person claiming to be adversely affected by such decision," Westover Zoning Ordinance, §22(D). Subsection (F) of §22, following Code, 8-24-55, provides:

> "F. In exercising its powers, the Board may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from as in its opinion ought to be done in the premises, and to that end shall have all the

powers of the Mayor from whom the appeal is taken."

Therefore, the board had authority and jurisdiction to rescind a permit.

A decision by a board of zoning appeals may be reviewed by certiorari in a circuit court, Code, 8-24-59, and the scope of review is defined at Code, 8-24-64:

> The court or judge may consider and determine the sufficiency of the allegations of illegality contained in the petition without further pleadings and may make a determination and render a judgment with reference to the legality of the decision or order of the board of zoning appeals on the facts set out in the petition and return to the writ of certiorari.

> If it shall appear to the court or judge that testimony is necessary for the proper disposition of the matter, the court or judge may take evidence to supplement the evidence and facts disclosed by the petition and return to the writ of certiorari, but no such review shall be by trial de novo.

> In passing upon the legality of the decision or order of the board of zoning appeals, the court or judge may reverse or affirm, in whole or in part, or may modify such decision or order.

Judge Starcher supplemented certiorari evidence with additional testimony as specifically authorized by Code, 8-24-64, *supra.*

We have delineated grounds for reversal of board of zoning appeals decisions in *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975). The presumption that a board's ruling is correct can be overcome by proof of lack of jurisdiction, plainly wrong factual findings or erroneous application of law; but here disputed acts justified this board to decide either way, and we cannot say its factual findings were plainly wrong.

Section 16 of Westover's zoning ordinance regulates performance standards for industrial uses. In relevant part it requires:

A. An Industrial Use is one which requires both buildings and open area for manufacturing, fabrication, processing, extraction, heavy repairing, dismantling, storage or disposal of equipment, raw materials, manufactured products or wastes, and provided the use conforms to the following performance standards:

\* \* \*

(3) Dust. No dust of any kind produced by the industrial operations shall be permitted to escape beyond the limits of the property being used.

\* \* \*

(8) Noise and Sound. A maximum of 70 decibels at the property line is permitted. Noise is required to be muffled so as not to become objectionable due to intermittance, beat frequency or shrillness. Sound may equal but not exceed street traffic noise in the vicinity during a normal day shift work period.

The board decided that DeCoals would be unable to comply with §16(A)(3) and §16(A)(8), and noncompliance would adversely affect the safety and general welfare of the citizenry. *See generally, Housatonic Terminal Corp. v. Planning and Zoning Board of Milford,* 168 Conn. 304, 362 A.2d 1375 (1975), wherein a permit was denied to an asphalt manufacturing plant on property zoned for heavy industrial uses because of failure to meet dust, noise and traffic standards.

Local governments have a right to zone as an exercise of police power. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926). "[A] municipality may enact a zoning ordinance which restricts the use of property in designated districts within the municipality if the restrictions imposed by the ordinance are not arbitrary or unreasonable and bear a substantial relation to the public health, safety, morals, or the general welfare of the municipality." *Carter v. City of Bluefield,* 132 W. Va. 881, 54 S.E.2d 747, 750 (1949), Syllabus Point 7.

Substantive due process considerations require legislation to be reasonable – to be substantially related to a legitimate goal. One of government's primary purposes is protecting its constituency. "Legislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power." *Huron Portland Cement Company v. Detroit*, 362 U.S. 440, ____, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). If the end is legitimate, our inquiry is limited to whether the means are substantially related to that end. It is not ours to judge the wisdom or efficacy of those chosen means.

> Moreover, government is and must be entitled to attack massive problems piecemeal, and to select those most susceptible areas which permit of the least destructive effect on the economy (see 2 Cooley, Constitutional Limitations [8th ed.] p. 1231; *United States v. Carolene Prods. Co.*, 304 U.S. 144, 151, 58 S.Ct. 778, 82 L.Ed. 1234). * * *

> This is not to say that there are not serious questions raised as to the wisdom and the practicality of the undoubtedly rigorous measures required by the ordinance. But the ultimate conclusion must be that these are questions within the domain of legislative and executive discretion because they involve choices among alternative reasonable courses of action based on the presently limited knowledge of the extent of the pollution evil and methods of cure. So long as there is reasonable basis in available information, and rationality in chosen courses of conduct to alleviate an accepted evil, there is no constitutional infirmity *(United States v. Carolene Prods. Co.*, supra, at pp. 151-154, 58 S.Ct. 778; *Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194, 209-210, 55 S.Ct. 187, 79 L.Ed. 281; *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, esp. pp. 80-81, 31 S.Ct. 337, 55 L.Ed. 369; *People v. Charles Schweinler Press*, 214 N.Y. 395, 406-408, 108 N.E. 639, 641-643). * * *" *Oriental Boulevard Co. v. Heller*, 27 N.Y.2d 212, 316 N.Y.S.2d 226, 228-29, 265 N.E.2d 72, 74-75 (1970).

Whether a no-dust standard is the best way to protect public health, welfare, safety and morals is a legislative judgment.[1]

> [T]he most important current trend in industrial zoning is the gradual movement towards zoning by performance standards. Since a primary purpose of industrial zoning is to regulate those establishments which result in substantial amounts of nuisance, it is clear that performance standards zoning * * * is a * * * sensitively attuned instrument for carrying out those purposes * * *. Williams, American Land Planning Law (Callaghan & Co., Chicago, Illinois, (1974), Volume 4, §103.01 *et seq.*, p. 31.

*Annot.*, Zoning Laws Prescribing Conditions of Business or Manufacturing Designed to Avoid Nuisance or Annoyance, 173 A.L.R. 271 (1948 and later case service); Anderson, American Law of Zoning (2d ed.), Volume 2, §9.41. Zoning by pollution performance standards is reasonable.

Is it, then, reasonable to prohibit escape of *any* dust? Are private property rights unreasonably sacrificed for public good? A community's sensible decisions protecting its health and welfare must prevail over any individual property rights; but is prohibition of any dust production sensible?

> This individual [property] right is not unqualified. It does have to yield to the higher and greater right of the best interests of the people. *Phipps v. City of Chicago*, 339 Ill. 315, 171 N.E. 289. This holds true though a proper exercise of the police power brings about a material financial loss, for that cannot stand in the way of public welfare, the latter not being susceptible to being impeded or thwarted by a private loss which is incident to the exercise of that power. *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann. Cas. 1917B, 927. The justification for a zoning ordinance reducing the value of some individual rights

---

[1] Dust has been declared a nuisance in many cases. *See Annot.*, Dust as Nuisance, 24 A.L.R.2d 194 (1952 and later case service).

is the greater benefit accruing to the public as a whole; and this includes the limitation of the potential value of a particular parcel of property. *Neef v. City of Springfield*, 380 Ill. 275, 43 N.E.2d 947. This court has no right to question legislative policy. When the legislature has determined what is a proper exercise of the police power, this court does have the right to determine whether the means employed in a particular matter have a real and substantial relation to the public health, comfort, morals, safety or welfare, or are unreasonable and arbitrary. *State Bank & Trust Co. v. Village of Wilmette*, 358 Ill. 311, 193 N.E. 131, 96 A.L.R. 1327; *2700 Irving Park Building Corp. v. City of Chicago*, 395 Ill. 138, 69 N.E.2d 827. In the use of his property according to his desires, the owner must not endanger or threaten the safety, health, comfort or general welfare of the people. *McCray v. City of Chicago*, 292 Ill. 60, 126 N.E. 557; *People ex rel. Younger v. City of Chicago*, 280 Ill. 576, 117 N.E. 779. When dealing with zoning ordinances in relation to the exercise of the police power, the public welfare is the dominant consideration. However, the imposed restrictions must bear a substantial relation to the public health, safety, morals or general welfare. *Forbes v. Hubbard*, 348 Ill. 166, 180 N.E. 767. A zoning ordinance passed in the exercise of a delegated police power is clothed with a presumption in favor of its validity. The party attacking it as an unreasonable and oppressive exercise of that power has the burden of showing affirmatively and clearly its unreasonableness. This court will not hold such ordinance unreasonable where there is room for a fair difference of opinion on the question. *Village of Western Springs v. Bernhagen*, 326 Ill. 100, 156 N.E. 753; *Reschke v. Village of Winnetka*, 363 Ill. 478, 2 N.E.2d 718; *People ex rel. Kirby v. City of Rockford*, 363 Ill. 531, 2 N.E.2d 842; Evanston Best & Co. v. Goodman, 369 Ill. 207, 16 N.E.2d 131. *DuPage County v. Henderson*, 402 Ill. 179, 83 N.E.2d 720, 725 (1949).

If people jointly resolve that no more dust or noise

inspired by industry in their community is acceptable, we should not interfere. They live there; they breathe the air; their lifestyles are affected by the noise and traffic; and they suffer whatever economic loss that results from regulations that eliminate certain potential industries that might there be put but for strict performance zoning rules. Any city is entitled to that choice.

Alleged technical infeasibility or economic hardship need not be considered. *Commonwealth Department of Environmental Resources v. Locust Point Quarries, Inc.,* 483 Pa. 350, 396 A.2d 1205 (1979); *Bortz Coal Co. v. Air Pollution Commission,* 2 Pa. Cmwlth. 441, 279 A.2d 338 (1971), *affirmed after remand,* 7 Pa. Cmwlth. 362, 299 A.2d 670 (1973). "Technology-forcing" pollution regulations have been approved, *Union Electric Company v. Environmental Pollution Agency,* 427 U.S. 246, 96 S. Ct. 2518, 49 L. Ed.2d 474 (1976).

It is a fairly debatable issue whether an absolute prohibition against dust is unreasonable or arbitrary, and "[c]ourts are not disposed to declare an ordinance invalid in whole or in part where it is fairly debatable as to whether the action of the municipality is arbitrary or unreasonable." *Town of Stonewood v. Bell,* ___ W. Va. ___, 270 S.E.2d 787, 790 (1980). This "fairly debatable" device for decision has been adopted by a majority of jurisdictions.[2]

Courts have written that a no-dust standard does not preclude development of any industry in an industrial zone. If it did, there might be different issue.[3] We find that this ordinance does not deny due process rights under federal or state constitutions.

Economic regulation is subject to minimum equal protection scrutiny, but we are taught that grandfather clauses in zoning laws do not deny equal protection.

---

[2] 82 Am.Jur.2d, Zoning and Planning, §29; 48 A.L.R.3d 1210 (19___); 101A C.J.S., Zoning and Land Planning, §269, Footnote 6.

[3] *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967). This scriviner must confess to serious reservations about this blanket "no dust of any kind" restriction.

As to the attack upon the ordinance because of arbitrary classification, this question has been so often discussed that nothing further need be said. The ordinance applies equally to all coming within its terms, and the fact that other businesses might have been included does not make such arbitrary classification as annuls the legislation. Nor does it make classification illegal because certain cities are included and others omitted in the statute. *Eckerson v. Des Moines,* 137 Iowa, 452, 115 N.W. 177. *Northwestern Laundry v. Des Moines,* 239 U.S. 486, 36 S.Ct. 206 *supra,* at 210, 60 L.Ed. 396.

We recognize a substantial problem caused by grandfather performance standard zoning clauses. Nonetheless, Westover is entitled to determine that "enough is enough", choosing not to interfere with property uses in existence when its zoning ordinance was enacted, but to prevent further intrusion upon air and noise quality by yet to be developed industries.

The United States Supreme Court recently wrote about whether a zoning restriction such as this was a "taking of property requiring just compensation" in *Agins v. Tiburon,* 447 U.S. 225, 261, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106, 112-113:

> The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, see *Nectow v. City of Cambridge,* 277 U.S. 183, 188, 72 L.Ed. 842, 48 S.Ct. 447 (1928), or denies an owner economically viable use of his land, see *Penn Central Transp. Corp. v. New York City,* 438 U.S. 104, 138, n 36, 57 L.Ed.2d 631, 98 S.Ct. 2646 (1978). The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of the state power in the public interest. Although no precise rule determines when property has been taken, see *Kaiser Aetna v. United States,* 444 U.S. 164, 62 L.Ed.2d 332, 100 S.Ct. 383 (1979), the question necessarily requires a weighing of private and public interests. * * *

In this case, the zoning ordinances substantially advance legitimate governmental goals. * * * The specific zoning regulations at issue are exercises of the city's police power to protect the residents of Tiburon from the ill-effects of urbanization. Such governmental purposes long have been recognized as legitimate. See *Penn Central Transp. Co. v. New York City*, supra, at 129, 57 L.Ed.2d 631, 98 S.Ct. 2646; *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 39 L.Ed.2d 797, 94 S.Ct. 1536 (1974); *City of Euclid v. Ambler Co.*, *supra*, at 394-395, 71 L.Ed. 303, 47 S.Ct. 114, 4 Ohio L. Abs. 816, 54 A.L.R. 1016.

\* \* \*

Although the ordinances limit development, they neither prevent the best use of appellants' land, see *United States v. Causby*, 328 U.S. 256, 262, and n 7, 90 L.Ed. 1206, 66 S.Ct. 1062 (1946), nor extinguish a fundamental attribute of ownership, see *Kaiser Aetna v. United States*, 444 U.S., at 180, 62 L.Ed.2d 332, 100 S.Ct. 383. * * * Thus, it cannot be said that the impact of general land-use regulations has denied appellants the "justice and fairness" guaranteed by the Fifth and Fourteenth Amendments. See *Penn Central Transp. Co. v. New York City*, 438 U.S., at 124, 57 L.Ed.2d 631, 98 S.Ct. 2646. (Footnotes omitted.)

We find that federal and state law support this trial court in all respects.

*Affirmed.*