401 S.E.2d 447

**Michael Allen MEANS**

v.

**George T. SIDIROPOLIS, Commr., et al.**

**No. 19507.**

Supreme Court of Appeals of West Virginia.

Nov. 30, 1990.

Dissenting Opinion of Justice McHugh Dec. 19, 1990.

Rehearing Denied Feb. 6, 1991.

---

Christopher S. Butch, Charleston, for Michael Allen Means.

Roger W. Tompkins, Atty. Gen., Bruce Ray Walker, Deputy Atty. Gen., Paul E. Jordan, Asst. Atty. Gen., Charleston, for George T. Sidiropolis, Com'r W. Va. Dept. of Motor Vehicles.

NEELY, Chief Justice:

In this case we are asked to determine the constitutionality of *W. Va. Code*, 18-8-11 [1988], which denies a driver's license "to any person under the age of eighteen who does not at the time of application

present a diploma or other certificate of graduation issued to the person from a secondary high school of this State or any other State, or documentation that the person (1) is enrolled and making satisfactory progress in a course leading to a general educational development certificate (GED) from a State approved institutional organization, or has obtained such certificate, (2) is enrolled in a secondary school of this State or any other State, or (3) is excused from such requirement due to circumstances beyond his or her control."

The appellant, Michael Allen Means, appeals from a final order of the Circuit Court of Kanawha County which upheld the suspension of his driver's license. The West Virginia Department of Motor Vehicles suspended the appellant's license because he was under the age of eighteen and had withdrawn from school. Mr. Means, who at the time was over sixteen, left school lawfully under *W.Va.Code*, 18–8–1 [1990], which provides in part:

"Compulsory school attendance shall begin with the seventh birthday and continue to the sixteenth birthday."

Before his lawful withdrawal from school, Mr. Means had obtained a junior operator's license from the Department of Motor Vehicles. Mr. Means received this license only after meeting the legal requirements for obtaining such a license that are set forth in *W.Va.Code*, 17B–2–5 [1990], 17B–2–6 [1978] and 17B–2–7 [1981].

■ Mr. Means has now reached the age of eighteen and is, therefore, outside the provisions of *W.Va.Code*, 18–8–11 [1988]. Technically, therefore, this case is moot because Mr. Means may now lawfully receive a regular driver's license; however, because this case presents an issue "which may be repeatedly presented to the trial court, yet escape review at the appellate level because of [its] fleeting and determinate nature," *Israel v. Secondary Schools Act Com'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) we believe the case should not be dismissed for mootness.

I.

On 10 January 1989 the Department of Motor Vehicles' Student Attendance Program sent Mr. Means a "Notice of Suspension." This notice informed Mr. Means that his license was to be suspended effective 11 February 1989 because "[y]ou are under the age of eighteen and have withdrawn either voluntarily or involuntarily from a secondary school," and the notice cited *W.Va.Code*, 17B–3–6(10) [1989].

Pursuant to the rights of which the notice informed him, Mr. Means filed a request for a hearing on the suspension of his license, which request was received by the Department on 19 January 1989. A hearing was scheduled for 31 January 1989, a date before the effective date of suspension. However, in the same letter sent by the Department to inform Mr. Means of his scheduled hearing, Mr. Means was also informed that the "Commissioner has, on his own motion, postponed this hearing. He will notify you when a hearing date has been scheduled."

The Department finally held a hearing on 21 April 1989, over three months after the Department received the request for a hearing. That hearing was conducted by a hearing examiner appointed by the commissioner and was limited in scope. According to the Notice of Suspension and the final order of the Department, the scope of the hearing was limited to the determination of: (1) whether Mr. Means was under the age of eighteen; and (2) whether Mr. Means had "withdrawn either voluntarily or involuntarily from a secondary school."

On 31 May 1989, more than a month after the hearing, Mr. Means received notice from the DMV that his driver's license was suspended until such time as he reached his eighteenth birthday or until he complied with the provisions of *Code*, 18–8–11 [1988]. The Commissioner specifically noted that "the law, as contained in *W.Va. Code*, 18–8–11(d) contemplates that the school superintendent (and those who assist him) be the *sole judge* of whether a student who has withdrawn from school should be accorded an exemption from complying with the provisions of *W.Va.Code*,

18–8–11." Moreover, the commissioner noted that the law does not confer upon the commissioner appellate jurisdiction over the superintendent and that he, the commissioner, could not consider whether Mr. Means should be excused from compliance with *Code,* 18–8–11 [1988]. Therefore, the commissioner suspended the appellant's license, effective 2 June 1989.

Mr. Means appealed the final order of the Department to the Circuit Court of Kanawha County, where the circuit court limited the issue before him to whether the restriction imposed by the Commissioner of the Department of Motor Vehicles is reasonable.

The circuit court asked the parties at the initial hearing to brief only the issue of the reasonableness of the school attendance requirement as a condition of the lawful possession of a junior or probationary license. The court specifically excluded the issue of the procedure, or lack thereof, followed by the school board and the school superintendent in concluding that Mr. Means' withdrawal from school was due to circumstances within his control and not due to those beyond his control. After argument, the court found that conditioning the privilege of possessing a junior operator's license on continued enrollment in some form of secondary education is not unconstitutional. The court also found that the appellant's due process rights had not been violated, but, rather, had been protected by the hearing held before the Department's hearing examiner.

## II.

We agree with the circuit court that conditioning the privilege of possessing a junior operator's license on continued enrollment in some form of secondary education is not unconstitutional, but we disagree with the circuit court that the hearing mechanism applied in this case was appropriate. In this case the only issue to be determined at the administrative level was whether Mr. Means was "excused from such requirement [i.e. school attendance] due to circumstances beyond his ... control." *W.Va.Code,* 18–8–11(a) [1988]. Be-

cause "the school district superintendent (or the appropriate school official of any private secondary school) with the assistance of the county attendance director and any other staff or school personnel, shall be the sole judge of whether such withdrawal is due to circumstances beyond the control of such person[,]" *Code,* 18–8–11(d) [1988], the hearing demanded by due process considerations must be held before the superintendent, his designate, or appropriate official of a private secondary school.

## III.

The appellant makes a strong case that *W.Va.Code,* 18–8–11 [1988] is unconstitutional because the means chosen by the legislature (namely forfeiture of a driver's license when a teenager voluntarily leaves school) to effect the legitimate public purpose of encouraging school attendance is not reasonably related to the end sought to be achieved. Thus the appellant argues that if what the legislature wants is mandatory school attendance until the age of eighteen, the appropriate means to achieve that end is to amend *W.Va.Code,* 18–8–1 [1987] to require compulsory attendance through the age of eighteen.

The appellant also argues that *W.Va. Code,* 18–8–11 [1988] explicitly recognizes that there will be occasions when withdrawal from school is beyond a student's control, but that in those circumstances the determination of whether the withdrawal is beyond a student's control is left to the uninstructed discretion of school officials. Appellant asserts that the statute gives no guidance to the school system concerning the procedures that should be followed to determine the reasons for withdrawal and that there are no standards set forth in the statute by which a court can measure the reasonableness with which the school officials' discretion is exercised. Indeed, in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the U.S. Supreme Court decided that possession of a driver's license constitutes a protectable property interest and that the state's suspension or revocation of a license implicates due process rights.

We disagree with the appellant's contention that adequate guidelines are not set forth in the statute by which to test the exercise of a school official's discretion. The statute provides an exemption for students who withdraw from school for "circumstances beyond their control." Like the phrase "reasonable doubt" in a criminal case, the words "circumstances beyond their control" create a quite specific standard.[1] We can envisage children who withdraw from school because they are needed to support their families; children who withdraw from school because of physical disabilities that preclude further attendance between the ages of sixteen and eighteen; and, children who withdraw from school because both the children and the schools agree that further attendance will

be less beneficial than on-the-job-training or some other program of personal development. These are, perhaps, the most obvious cases, but there will inevitably be other cases that demand the exercise of informed discretion.

## IV.

◼ The issue of the statute's constitutionality requires us to apply no higher standard of review than the "reasonable relationship" test articulated in *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).[2] Statutes that do not affect suspect categories such as race or sex come to us with a strong presumption of their constitutionality. The appellant's argument that drivers' licenses and school

---

1. Guidelines for or definitions of expressions such as "reasonable doubt" and "circumstances beyond their control" are useless. We have made it clear that a jury instruction attempting to define "reasonable doubt" probably confuses the jury more than it helps it. *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883, 891 (1983). We noted in *State v. Young*, 134 W.Va. 771, 61 S.E.2d 734 (1950) that we have always discouraged jury instructions attempting to define reasonable doubt, and we cited a large number of cases standing for this proposition. We also stated:

> As this Court has said: "The ordinary jury knows what a reasonable doubt means, and attempts to define it are discouraged. They but tend to confuse." [Citations omitted]. 134 W.Va. at 782, 61 S.E.2d at 740–1.

2. In *McGowan*, the challenge to a statute went under the heading "equal protection", however, the standard the U.S. Supreme Court applied in that case, the "rational relation" standard, is the same liberal standard applied in any due process challenge not involving a fundamental right:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 U.S. at 425–6, 81 S.Ct. at 1104–5.

In West Virginia, we have expressly recognized that the concept of substantive due process is embodied in *W.Va. Const.*, Art. 3, § 10, which provides that, "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

In *DeCoals, Inc. v. Board of Zoning Appeals of City of Westover*, 168 W.Va. 339, 284 S.E.2d 856 (1981), we stated, "Substantive due process considerations require legislation to be reasonable—to be substantially related to a legitimate goal." *Id.*, 168 W.Va. at 343, 284 S.E.2d at 858. The test is not a strict one. If there is any rational connection between the legislation's legitimate ends and the means by which the ends are to be reached, the legislation will be upheld. In *Thorne v. Roush*, 164 W.Va. 165, 168, 261 S.E.2d 72, 74 (1979), we said:

> Inherent in the due process clause of the State Constitution are both the concept of substantive due process and the concept of equal protection of the laws. In order for a statute to withstand constitutional scrutiny under the substantive due process standard, it must appear that the means chosen by the Legislature to achieve a proper legislative purpose bear a rational relationship to that purpose and are not arbitrary or discriminatory.

After that passage, we cited *State ex. rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977), in which we found the rational relationship to be lacking. In that case, a status offender challenged legislation whereby he was imprisoned along with juvenile criminal offenders. We found, "no rational connection between the legitimate legislative purposes of enforcing family discipline, protecting children, and protecting society from uncontrolled children, and the means by which the State is permitted to accomplish these purposes, namely incarceration of children in secure, prison-like facilities." *Id.*, 160 W.Va. at 184–5, 233 S.E.2d at 326.

attendance are unrelated and that the legislature should have chosen a direct rather than an indirect means to encourage school attendance makes sense as debating society logic. Further reflection instructed by an understanding of human nature, however, leads us to conclude that the legislature's selected method of encouraging education is not sufficiently irrational as to confound informed notions of substantive due process.

Initially, it is important to point out that persons between the ages of sixteen and eighteen years of age are not entitled to regular, unconditional drivers' licenses. Rather, under *W. Va. Code*, 17B–2–3 [1988] a person under the age of eighteen is entitled to only a "junior" or "probationary" drivers' license. Sixteen-year-old drivers have by far the worst driving record of any age group, and it is their youth, not their lack of driving experience which makes them dangerous.[3] Thus, at the simplest level, a child who has a driver's license but is not meaningfully employed during the day by attending school or working at a serious job, has a higher likelihood than children so occupied of being out and about making mischief with his or her car. Indeed, the children who withdraw from school because of circumstances beyond their control are not necessarily any more irresponsible than other teenagers. But a child who has an opportunity to go to school and deliberately chooses not to avail himself or herself of such opportunity, demonstrates a general lack of responsibility.

Finally, and perhaps most convincingly, mandatory attendance is not necessarily the best way of effecting the goal of better education. It has been suggested that stay-ins pose a greater threat to our nation's education than drop-outs. Some youth completely lose interest in school, and make being disruptive their curriculum. Keeping them in school will not educate them, but only allow them to hinder the efforts of students who do want to learn. Everyone knows that institutions, public or private, that draw and retain only the children who want to learn, have a higher level of order and discipline than institutions that are forced to babysit youth who have no interest in education. This applies regardless of the socioeconomic backgrounds of the interested students.[4]

Under our mandatory attendance law, *W. Va. Code*, 18–8–1 [1990], a youth who dislikes school may leave after his sixteenth birthday, as Mr. Means did. Therefore, had the legislature selected mandatory attendance as the way to keep children in school until their eighteenth birthday, children would remain in school who are not suited by disposition to the school environment and senior high schools would face far more disciplinary problems than they face now.

Fortunately, the statute providing for the revocation of licenses for non-attendance provides sufficient latitude that when a child's departure from school is by the mutual consent of the school authorities and the child, a waiver may be given. This permits the peaceful departure of those students who will profit not at all from continuing formal education, allowing, then, the schools to protect from disruptive influences the students who want to learn.

But many students will profit from continued school enrollment, regardless of how much they dislike going to school and regardless of how ignorant they are of the correlation between their future welfare and a high school diploma. These children, often from peer pressure and immaturity, would throw away their opportunities in life if the legislature did not balance negative peer pressure with the positive incentive of conditioning their junior operator's license upon continued school attendance. We cannot quarrel with the fact that the legislature has chosen to achieve its lauda-

---

3. *See*, Witzenburg, "Why Johnny Can't Drive", *Home Mechanix*, September 1987, pp. 78–87.

4. For further discussion of the disciplinary problems involved with stay-ins, *see*, Toby, "Of Dropouts and Stay-ins: The Gershwin Approach", *The Public Interest*, number 95, Spring 1989, pp. 3–13.

tory goal through the use of a rapier rather than through the use of a cudgel.

## V.

This brings us, then, to the question of what hearing mechanism due process demands when a junior operator's license is to be revoked because a student withdraws from school. The ultimate judge of whether a person has withdrawn "due to circumstances beyond the control of such person" is the superintendent, his delegate or the appropriate school official of any private secondary school, so it becomes only reasonable that the hearing should be held before the responsible public or private school official.

■ Because, in cases of this nature, the Department of Motor Vehicles performs nothing but a non-discretionary, administrative function, the Department should inform students at the time it notifies them that their licenses will be suspended that they have a right to a hearing before the appropriate school official. Furthermore, the Department should inform the junior driver of the procedures that the driver must take to avail himself or herself of the hearing mechanism. At the same time, however, the Department should inform the junior driver that if the question he wishes to raise is one of improper identity, incorrect age, or some other bookkeeping error, then the hearing can be before a representative of the Department.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Kanawha County is affirmed in part and reversed in part. Because this case is technically moot, further proceedings would be unavailing so final judgment is entered here.

Affirmed in part, reversed in part.

MILLER and McHUGH, JJ., dissent and reserve the right to file a dissenting opinion.

McHUGH, Justice, dissenting:

I dissent from the majority opinion because I believe that *W.Va.Code*, 18-8-11 [1988] is unconstitutional for two reasons:

(1) the statute does not contain appropriate procedural due process safeguards which are traditionally required before suspension of a right or even a privilege; and (2) the statute is vague in its use of terms which constitute key elements in the statute's application. Specifically, these two constitutional deficiencies violate the due process clauses of the *United States Constitution* and the *West Virginia Constitution*. See *U.S. Const.* amend. XIV, § 1; *W.Va. Const.* art. III, § 10. The majority opinion is problematic in that it addresses the legislature's laudatory goal of keeping minors in school rather than the legal issues arising under the application of the statute.

## I

It is well established that procedural due process is required in administrative proceedings. For example, chapters 17 to 17D of the *W.Va.Code* contain statutory enactments pertaining to roads, highways, motor vehicle administration and safety. Under those statutes, before the Department of Motor Vehicles may revoke an operator's or chauffeur's license for most offenses, a hearing must be conducted by the Department. *W.Va.Code*, 17B-3-6 [1989].

*W.Va.Code*, 18-8-11 [1988], however, was enacted as a part of this state's *education* laws, along with all of the other laws pertaining to schools, school personnel, and education that may be found in chapters 18 and 18A of the *W.Va.Code*. Chapters 18 and 18A, like chapters 17 to 17D, establish mechanisms for ensuring that due process is afforded to persons who are aggrieved by certain administrative actions. For example, under the provisions of *W.Va.Code*, 18A-2-8 [1990], before an employee is suspended or dismissed from employment by a county board of education, such employee must be given written notice of the charges as well as notice that within five days, the employee may request a hearing pursuant to the grievance procedures established by article 29 of chapter 18.

The statutory provision at issue in this case, namely, *W.Va.Code*, 18-8-11 [1988],

however, provides no such hearing or even notice by school authorities to a student that the student is in jeopardy of losing his or her license to drive.

Rather than reiterating the fundamental principles of procedural due process, for an excellent discussion of such principles, see this Court's opinion, authored by Justice Charles H. Haden II, in *State ex rel. Payne v. Walden*, 156 W.Va. 60, 190 S.E.2d 770 (1972).[1]

Under *W.Va.Code*, 18–8–11 [1988], once the superintendent makes the decision that a student is withdrawn from school, *and* that the student's withdrawal was *not* due to circumstances beyond his or her control, then the superintendent notifies the Department of Motor Vehicles of such withdrawal. The Department of Motor Vehicles then conducts a hearing on the revocation. That hearing merely determines: (1) whether the student is under the age of eighteen; and (2) whether the student is enrolled in school. It does not review the superintendent's decision of whether or not the student withdrew from school due to circumstances beyond his or her control. Consequently, at no point does the student have an opportunity to demonstrate to either the superintendent or the Department of Motor Vehicles that the circumstances for withdrawal are beyond his or her control.

The majority acknowledges the absence of due process in the revocation proceedings in this case, but by holding that "it becomes only reasonable that the hearing should be held before the responsible public or private school official," the majority opinion, in essence, has enacted its own amendment to *W.Va.Code*, 18–8–11 [1988] in order to save the statute from a constitutional failure. Furthermore, the majority

opinion goes on to state that the Department of Motor Vehicles, whose function under the statute is purely mechanical, should notify the revokee that he or she has "a right to a hearing before the appropriate *school* official." (emphasis supplied) Still another amendment to *W.Va.Code*, 18–8–11 [1988].[2]

Noticeably absent from the majority opinion is any reference to other states that have enacted similar legislation, and in particular, one state that *has* installed a procedure by which a person is afforded at least a hearing to determine the necessity of possessing a drivers' license.

The General Assembly of Kentucky recently enacted a statutory provision to accomplish the same result as *W.Va.Code*, 18–8–11 [1988]. *Ky.Rev.Stat.Ann.* § 159.051 (Michie 1990). Apparently though, the Kentucky law has recognized the difficulties of the procedural due process question, and this is reflected in that state's statute. Under the Kentucky statute, after the superintendent of schools notifies that state's department of transportation and the person's license is revoked, the student may request an *ex parte* hearing before a district court, which is a court of record. Unlike *W.Va.Code*, 18–8–11 [1988], which provides that the superintendent of schools "shall be the sole judge of whether [the withdrawal from school] is due to circumstances beyond the control of such person," a *district court*, under the Kentucky statute, determines whether "the license is needed to meet family obligations or family economic consideration which if unsatisfied would create an undue hardship or that the student is the only licensed driver in the household or the student is not considered a dropout or academically

---

1. Justice Haden was a member of this Court between 1972–75. He is currently the Chief Judge of the United States District Court for the Southern District of West Virginia.

2. Although the majority opinion sets forth notice requirements by which the Department of Motor Vehicles must follow, it fails to articulate any specific procedure that the Department must follow so as to ensure that the revokee is fully apprised of his or her right to a hearing before school officials. This will more than

likely place a burdensome duty on the Department of Motor Vehicles, an agency whose procedures are otherwise set forth by clear *statutory* prescriptions. *See, e.g., W.Va.Code*, 17C–5A–1, *et seq.*, which establishes administrative procedures for suspension and revocation due to drunk driving offenses.

Consequently, the procedures set forth by the majority opinion are as vague as the statute itself.

deficient[.]" *Ky.Rev.Stat.Ann.* § 159.051(3) (Michie 1990). Furthermore, the Kentucky statute allows the student to appeal to a circuit court the district court's decision.[3]

I can appreciate the majority's point that the driver's license at issue in this case is only a "junior or probationary operator's license." *W.Va.Code,* 17B–2–3(1) [1988]. However, this fact will not support overlooking the procedural due process deficiencies of *W.Va.Code,* 18–8–11 [1988]. Simply stated, the students affected by this statute are entitled to due process.[4]

Moreover, the United States Supreme Court has articulated the view that before a drivers' license may even be *suspended,* procedural due process is required. In so holding, the Supreme Court does not differentiate student drivers under the age of eighteen from other drivers:

> Once [drivers'] licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.... This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'

*Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1971) (citations omitted).

Therefore, because the opportunity to possess a drivers' license is extended to persons between the ages of sixteen and eighteen, procedural due process is required before such a license may be revoked. This includes the opportunity to be heard on the most critical element in determining whether a drivers' license shall be revoked: the circumstances leading to the student's withdrawal from school.

## II

*W.Va.Code,* 18–8–11 [1988] should also be declared void for vagueness.

"It is a general principle of statutory law that a statute must be definite to be valid." 16A Am.Jur.2d *Constitutional Law* § 818, at 988 (1979). In *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974), Justice James M. Sprouse, writing for a unanimous Court, thoroughly delineated principles of the vagueness doctrine, particularly as such principles apply to criminal statutes.[5] In *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984), Justice Miller expounded upon these principles further, pointing out that "[t]he vagueness standard may vary

---

**3.** The Kentucky statute also provides that revocation "shall not be permitted unless the local school district shall operate an alternative education program approved by the Department of Education designed to meet the learning needs of students who are unable to succeed in the regular program." *Ky.Rev.Stat.Ann.* § 159.051(2) (Michie 1990).

Obviously, the Kentucky statute, unlike this state's statute and the majority's interpretation of such statute, is primarily concerned with implementing every possible means to keep students in school before resorting to drastic measures, such as revoking the student's drivers' license.

Louisiana and Tennessee have passed similar laws as well. Their statutes resemble *W.Va. Code,* 18–8–11 [1988] more closely than does Kentucky's. However, even under the Louisiana version, the procedures for a hearing before the agency which revokes the student's license is clearly set forth in the statute. *See La.Rev.Stat.*

Ann. § 32:431 (West 1989); *Tenn.Code Ann.* § 49–6–3017 (1990).

**4.** For example, in the context of school suspension procedures,

> the high school student, perhaps even more than the university student, deserves careful adherence to concepts of procedural fairness and reasonableness by school officials ... in that as minors they occupy a different status under the law and often are too inexperienced or immature to know how to protect themselves against charges of misconduct.

68 Am.Jur.2d *Schools* § 269, at 593 (1973). *See also Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725, 739 (1975) ("Students facing temporary suspension have interests qualifying for protection of the Due Process Clause[.]")

**5.** Justice Sprouse was a member of this Court from 1973–75. He is now a Judge on the United States Court of Appeals for the Fourth Circuit.

depending on the type of statute involved." *Id.*, 174 W.Va. at 546, 328 S.E.2d at 152.

In *Hartsock–Flesher*, we held: "It is appropriate under the Due Process Clause vagueness doctrine to apply a less restrictive test to statutes or ordinances involving economic matters in which criminal penalties are not at issue." *Id.*, syl. pt. 3.

Certainly then, the statute at issue in this case, *W.Va.Code*, 18–8–11 [1988], would be subject to more scrutiny under the vagueness doctrine than a statute involving economic matters, as the object of the statute in this case is to revoke a drivers' license.

The provisions of *W.Va.Code*, 18–8–11 [1988], which ultimately lead to revocation of a student's drivers' license, do not apply if the student's withdrawal from school is due to "circumstances beyond the control" of such student.

This term, which, in essence, constitutes the most critical element in the decision to revoke, is not defined by the statute nor are there any guidelines which the superintendent may follow in determining whether a student's withdrawal is due to circumstances beyond his or her control.

Clearly, because application of the statute depends upon an interpretation of that term, standards should be set forth to guide the "sole judge," the superintendent, in so interpreting.

Therefore, I disagree with the majority opinion that the phrase "circumstances beyond the control" of the student "create[s] a quite specific standard."

Furthermore, *W.Va.Code*, 18–8–11 [1988] is silent with respect to the student whose drivers' license is revoked due to a withdrawal from school, but later, is unable to return to school for reasons which, at the later time, might be beyond his or her control. The statute is not clear as to how

this student can retain his or her driving privileges.

Moreover, *W.Va.Code*, 18–8–11 [1988] does not even differentiate between students who have drivers' licenses from those who do not. Consequently, following the procedures set forth therein, that the attendance director or chief administrator notify the Department of Motor Vehicles of the student's withdrawal, the Department of Motor Vehicles is saddled with the unnecessary duty of determining which students are even affected by the statute.

Rather than attempting to salvage the statute by clarifying its terms, we should declare it void for vagueness and allow the legislature to enact a version which would rise to a level of constitutional competency.

### III

Because the statute at issue in this case does not pass constitutional muster, then it must be declared invalid. "An Act of the Legislature which clearly violates one or more provisions of the State Constitution will be declared invalid." Syl. pt. 5, *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964).

If the legislature wanted to encourage school attendance until the age of eighteen, then it should have chosen a more direct means, such as amending *W.Va.Code*, 18–8–1 [1990], to increase the age of compulsory school attendance to the age of eighteen.[6]

In any event, this does not change the constitutionally deficient nature of *W.Va. Code*, 18–8–11 [1988], which violates principles of due process and is vague under section 1 of the fourteenth amendment to the *United States Constitution* as well as article III, section 10 of the *West Virginia Constitution*.

Accordingly, I dissent.

---

**6.** The majority's suggestion that "stay-ins pose a greater threat to our nation's education than drop-outs" is irrelevant to deciding the constitutionality of *W.Va.Code*, 18–8–11 [1988].

One would hope that more compassion would be exercised by public officials in seeking ways to *improve* education *for all* instead of resigning to the notion that the educational system is beyond repair, as the majority opinion so implies.

I am authorized to state that Justice MILLER joins me in this dissenting opinion.