Midway Coal Company, Appellant *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

Argued December 5, 1979, before Judges WILKINSON, JR., BLATT and CRAIG, sitting as a panel of three.

*David R. Cashman,* of *Cauley, Birsic & Conflenti,* for appellant.

*Thomas Y. Au,* Assistant Attorney General, for appellee.

OPINION BY JUDGE BLATT, April 2, 1980:

Appellant, Midway Coal Company, operates a strip mine in Washington County near McDonald, and on October 3, 1977 the Department of Environmental Resources (DER) filed a criminal complaint charging it with violating Section 8 of the Air Pollution Control Act (Act), Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §4008. Specifically, the DER alleged that the appellant caused the discharge of airborne dust from its property during the month of August, 1977 so as to "cause air pollution" under Section 8 of the Act.[1]

Pursuant to Section 9 of the Act,[2] summary proceedings were held before a district justice and on November 14, 1977 the appellant was convicted of violating the Act and received the maximum fine of $100.00. It appealed to the Court of Common Pleas of Washington County which, after a de novo hearing, affirmed the conviction. It has now appealed here pursuant to our appellate jurisdiction under Section 762 (a)(2) of the Judicial Code, 42 Pa. C.S. §762(a)(2).

The elements of the crime of causing air pollution are found in Section 3(5) of the Act,[3] which defines "air pollution" as follows:

(5) 'Air pollution.' The presence in the outdoor atmosphere of any form of contaminant including but not limited to the discharging from stacks, chimneys, openings, buildings, structures, open fires, vehicles, processes, or any other source of any smoke, soot, fly ash, dust, cinders, dirt, noxious or obnoxious acids, fumes, oxides, gases, vapors, odors, toxic or radioactive substances, waste, or any other matter in such place, manner, or concentration in-

---

[1] 35 P.S. §4008.

[2] 35 P.S. §4009.

[3] 35 P.S. §4003(5).

imical or which may be inimical to the public health, safety, or welfare or which is, or may be injurious to human, plant or animal life, or to property, or which unreasonably interferes with the comfortable enjoyment of life or property.

The appellant argues: (1) that a conviction for causing air pollution cannot rest on the subjective testimony of witnesses because DER regulations promulgated under the Act provide specific scientific tests for measuring airborne particulates to determine a violation; (2) that, even if subjective testimony is admissible, DER failed to prove a violation here beyond a reasonable doubt; and (3) that the definition of "air pollution" in Section 3(5) of the Act,[4] is unconstitutionally vague.

As to the first contention, it has been held that, if an acceptable scientific test is available to measure the rate of emissions from a pollution source, proof of a violation of the Act must include evidence of such a test. *Department of Environmental Resources v. Locust Point Quarries, Inc.*, 483 Pa. 350, 396 A.2d 1205 (1979); *Bortz Coal Co. v. Commonwealth*, 2 Pa. Commonwealth Ct. 441, 279 A.2d 388 (1971). On the other hand, it has also been held that, if no scientific test is available to measure the alleged pollution, proof of a violation of the Act may rest on the evidence as a whole, including witnesses' observations. *Locust Point Quarries, supra; Rushton Mining Co. v. Commonwealth*, 16 Pa. Commonwealth Ct. 135, 328 A.2d 185 (1974).

The DER presented testimony below to the effect that no accepted scientific test exists for measuring emissions from an open area source such as the surface mine involved here, and that the tests described

---

[4] *Id.*

in DER regulations for determining ambient air quality standards are not applicable for measuring open source emissions such as dust from a strip mine. Furthermore, the DER indicated that it has not promulgated a regulation requiring the use of a scientific test for the type of fugitive particulate matter involved here. We must therefore conclude that, for the purposes of this case, the court below was not in error in relying exclusively on the testimony of witnesses for proof of a violation of the Act.

As to the contention that, even if a conviction could rest solely upon subjective evidence, nevertheless, the evidence adduced by the DER here failed to prove beyond a reasonable doubt that the defendant caused air pollution, we must also disagree. The evidence below reveals that the appellant used a dragline excavating machine to shovel away dirt and shale so as to expose the coal stratum and that the dirt was then dropped from the dragline shovel into dump trucks. According to the testimony of the DER environmental specialist who investigated the alleged air pollution, the discharges of dust could have been avoided by watering down the area during the excavating operations. The DER also produced four witnesses having homes within 500 feet of the appellant's mine who specifically testified that in August of 1977 they frequently saw large clouds of dust travel from the strip mine onto their properties. According to these witnesses, the clouds of dust were especially thick and bothersome when the dragline shovel dropped its contents from midair into the dump trucks. The record also reveals that these neighbors experienced accumulations of dust both inside and outside their homes; that even inside their homes they were bothered by dust getting in their eyes and mouths; that the accumulation of dust was so severe as to impair food preparation; that dust

accumulated up to one inch on one neighbor's porch; and that the dust forced daily house-cleaning. In short, our review of the record indicates that the DER produced more than sufficient evidence to prove that the appellant was guilty of causing air pollution.

As to the contention that the definition of "air pollution" in Section 3(5) of the Act,[5] is unconstitutionally vague, we believe it to be well settled that " '[T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . .' " *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926), *quoted in Commonwealth v. Heinbaugh*, 467 Pa. 1, 5, 354 A.2d 244, 246 (1976). We also believe that statutes which fail to provide such notice violate the Due Process Clause of the United States Constitution. *Heinbaugh, supra.* Here, however, because the vagueness challenge does not involve the assertion of a fundamental right, such as freedom of expression, we must measure the challenged statutory proscription not against the hypothetical conduct that the statute could possibly embrace, but against the defendant's specific conduct. *United States v. Powell*, 423 U.S. 87 (1975); *Heinbaugh, supra.*

And we believe that the specific enumeration of various contaminants in Section 3(5),[6] is sufficient notice that actions which cause such airborne contaminants will be illegal if the contaminants "[are] or may be injurious to human, plant or animal life, or to property, or . . . unreasonably [interfere] with the comfortable enjoyment of life or property." We believe that the amount of particulate matter released by the appellant here would unreasonably interfere with the comfortable enjoyment of the life and prop-

---

[5] *Id.*

[6] *Id.*

erty of a substantial segment of the neighboring community, and we believe that the standard set forth in the Act was sufficient to put the appellant on notice that its actions were causing "air pollution". We must accordingly affirm the conviction.

### ORDER

AND Now, this 2nd day of April, 1980, the order of the Court of Common Pleas of Washington County is affirmed.

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.