**[J-87-2016] [OAJC: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | No. 10 EAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court at No. 2445 CD |
| | : | 2009 filed 8/7/2015 reversing and |
| | : | remanding the Order, dated 11/10/2009 |
| v. | : | in the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 03055, July Term, 2009 |
| CITY OF PHILADELPHIA AND | : | |
| PHILADELPHIA COMMISSION ON | : | ARGUED: September 13, 2016 |
| HUMAN RELATIONS, | : | |
| | : | |
| Appellants | : | |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: April 26, 2017**

In my view, proper application of the two-part test set forth in *Commonwealth, Dep't of Gen. Servs. v. Ogontz Area Neighbors Ass'n*, 483 A.2d 448 (Pa. 1984), reveals the Legislature's intent to subject SEPTA to the jurisdiction of the Philadelphia Commission on Human Relations ("Philadelphia Commission") and to the Philadelphia Fair Practices Ordinance ("FPO"). The opinion announcing the judgment of the Court ("OAJC"), pursuant to its interpretation and analysis of *Ogontz*'s first analytic prong, reaches a contrary conclusion. Justice Wecht, based upon an analysis of *Ogontz*'s second analytic prong, also finds that SEPTA is exempt from the anti-discrimination provisions of the FPO. Both the OAJC and Justice Wecht's Concurrence reach their conclusions based upon SEPTA's sovereign immunity, but in so doing overstate the

scope and breadth of the protections that sovereign immunity provides. Properly understood, sovereign immunity poses no obstacle to subjecting SEPTA to the jurisdiction of the Philadelphia Commission in all cases not seeking monetary damages or mandatory injunctive relief.[1] Accordingly, I respectfully dissent.

I join in Justice Wecht's discussion of the analytic framework required by *Ogontz*. *Ogontz*'s first analytic prong requires the Court in this case to look to the language of the Metropolitan Transportation Authorities Act ("MTAA") and the First Class City Home Rule Act ("Home Rule Act") – SEPTA's and the Philadelphia Commission's enabling statutes, respectively – to determine whether either contains an express statement that one entity or the other has priority in the event of a conflict. Concurring Op. (Wecht, J.) at 3. As the Concurrence explains, no express statement exists in either act, making the first prong of the *Ogontz* test inconclusive. *Id.*

I likewise agree that the OAJC's examination of the first prong erroneously extended beyond consideration of the enabling legislation to the statutory language of the Pennsylvania Human Relations Act ("PHRA"). 43 P.S. § 954(b). Moreover, and more importantly, I disagree with the OAJC's analysis of that statutory language. Pursuant to the MTAA, SEPTA is a Commonwealth agency and has sovereign immunity. 74 Pa.C.S.A. § 1711(a), (c)(3). As a Commonwealth agency, however, SEPTA has no sovereign immunity with respect to compliance with the PHRA. 43 P.S. § 954. SEPTA is thus within the jurisdiction of the Pennsylvania Human Relations Commission ("PHRC") and subject to the PHRA's anti-discrimination provisions, which

---

[1] A mandatory injunction commands the performance of some positive act while a prohibitory injunction enjoins the performance of an act. *See generally Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981).

forbid various forms of discrimination, including discrimination based upon race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability. 43 P.S. §§ 955, 956(a). In contrast, the FPO provides additional anti-discrimination protections, including, inter alia, discrimination based upon gender identity, sexual orientation, ethnicity or marital status. Phila. Code § 9-1103(1).[2]

According to the OAJC, "[s]ection 954 is an explicit expression of the legislature's intent to grant the State Commission exclusive jurisdiction over Commonwealth agencies in anti-discrimination matters." *Id.* I cannot agree, as in my view an "explicit expression" of the legislature's intent for the PHRC to have exclusive jurisdiction over Commonwealth agencies in anti-discrimination matters would include some language to that effect. The PHRA does not provide for the exclusive jurisdiction of the PHRC in anti-discrimination matters involving Commonwealth agencies. If the legislature had so intended, it could have said, simply, "the PHRC has exclusive jurisdiction over Commonwealth agencies in anti-discrimination matters," or words to that effect. It did not do so. A directive that Commonwealth agencies are subject to the jurisdiction of the PHRC does not imply that they are not subject to the jurisdiction of any other tribunals. The totality of legislative intent in this regard is that SEPTA, as a Commonwealth agency, must comply with the PHRA. That point, however, is neither controversial nor relevant to whether SEPTA is also subject to the jurisdiction of the Philadelphia Commission.

---

[2] The Home Rule Act grants broad powers to Philadelphia to legislate with respect to its municipal functions. *See* 53 P.S. §§ 13101-13157. It is not contested that Philadelphia is permitted to legislate in the field of anti-discrimination law.

*Ogontz*'s second analytic prong requires the Court to assess the consequences of subjecting SEPTA to the FPO and, conversely, of prohibiting the Philadelphia Commission from enforcing the FPO against SEPTA. With respect to subjecting SEPTA to compliance with the FPO, Justice Wecht's Concurrence insists that SEPTA's sovereign immunity makes this functionally impossible. Concurring Op. (Wecht, J.) at 3. The Concurrence bases this conclusion on an extremely broad view of the scope of the protections afforded by sovereign immunity. This Court has repeatedly held that sovereign immunity acts as a shield against lawsuits in two discrete circumstances: those seeking money damages or the recovery of property, and those requesting mandatory injunctive relief to compel affirmative actions. *See, e.g.*, *Fawber v. Cohen*, 532 A.2d 429, 433-34 (Pa. 1987). Conversely, sovereign immunity does not shield Commonwealth agencies from lawsuits seeking declaratory relief or prohibitory injunctive relief, *Legal Capital, LLC, v. Medical Prof. Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302-03 (Pa. 2000), or bar actions in mandamus to require a state agency to perform a ministerial or mandatory statutory duty. *Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Commw. 2010); *Kee v. Pa. Tpk. Comm'n*, 685 A.2d 1054, 1059 (Pa. Commw. 1996).

Justice Wecht, however, attempts to expand the protections of sovereign immunity exponentially, contending (without citation to any statutory language) that the General Assembly, in providing SEPTA with sovereign immunity, intended to shelter SEPTA from having to incur "financial and temporal costs of litigation." Concurring Op. (Wecht, J.) at 5. According to the Concurrence, the legislative intent in granting sovereign immunity to SEPTA was to shield it from the rigors of discrimination litigation

generally, outside of the PHRC context. *Id.* at 7 n.3 (stating that the General Assembly indicated its "express will that SEPTA not be subjected to litigation"). The Concurrence thus claims that SEPTA's protection from complaints brought before the Philadelphia Commission for alleged violations of the FPO must be complete, and thus to effectuate the "legislative will to preclude subjecting SEPTA to local administrative proceedings of whatever nature," Justice Wecht concludes that the Philadelphia Commission may not be permitted to exercise jurisdiction over SEPTA at all – including jurisdiction over claims for which SEPTA's sovereign immunity offers it no protection. *Id.*

The Concurrence's legislative intent argument rests on an extremely broad view of the protections afforded by sovereign immunity, and one not grounded in our prior decisions defining the scope of the doctrine. Contrary to Justice Wecht's contention, a grant of sovereign immunity carries no concomitant privilege to be free of all costs of litigation. It is true that in cases that fall within the protections of sovereign immunity, litigation expenses may be kept to a minimum, as these claims may be dismissed at the outset. Justice Wecht cites to two such cases: *Games Int'l, Inc. v. Com.*, 66 A.3d 740 (Pa. 2013) and *Mullin v. Commonwealth, Dept. of Trans.*, 870 A.2d 773 (Pa. 2005).[3] The Concurrence cites to no Pennsylvania case, however, holding that sovereign immunity protects its holder from the "financial and temporal costs of litigation" in cases where the doctrine does **not** provide its holder with immunity from suit.

---

[3] The Concurrence also cites to a Commonwealth Court decision, *Stackhouse v. Com., Pennsylvania State Police*, 892 A.2d 54 (Pa. Commw. 2006), that involved a request for declaratory relief. The trial court dismissed it on preliminary objections based upon sovereign immunity. The Commonwealth Court affirmed, concluding that the request for a declaration of rights was sought only to provide "the legal predicate for a damage or other immunity-barred claim." *Id.* at 62.

The Concurrence likewise directs us to no statutory language in the MTAA stating, or even suggesting, that by granting sovereign immunity, the legislature also intended to preclude local administrative bodies from exercising jurisdiction over SEPTA. Section 1171(c)(3) of the MTAA, the provision granting sovereign immunity to SEPTA, provides no exclusions from the jurisdiction of any tribunal, including but not limited to no exclusions from the jurisdiction of local administrative bodies like the Philadelphia Commission. Without any mention of any jurisdictional exceptions, section 1171(c)(3) merely states that authorities created under the MTAA and their members, officials, officers and employees "shall continue to enjoy sovereign and official immunity." 74 Pa.C.S. § 1171(c)(3). The grant of sovereign immunity is entirely irrelevant to the issue of whether the PHRC has exclusive **jurisdiction** over Commonwealth agencies like SEPTA.[4]

Justice Wecht also contends that the General Assembly's decision not to amend the PHRA to include anti-discrimination protections for, inter alia, gender identity and sexual orientation, at the state-wide level evinces a legislative intent not to require Commonwealth agencies to comply with local regulations that do contain these

---

[4] Sovereign immunity is an affirmative defense to liability, and by rule it must be raised in new matter. Pa.R.C.P. 1030; *Brimmeier v. Pennsylvania Tpk. Comm'n*, 147 A.3d 954, 960 (Pa. Commw. 2016). Importantly, the availability of sovereign immunity as a defense does not go to the jurisdiction of the tribunal. *Chem. Nat. Res., Inc. v. Republic of Venezuela*, 215 A.2d 864, 867 (Pa. 1966) ("Sovereign immunity is in the nature of an affirmative defense; (a) it does not go to jurisdiction and (b) it can be waived."). When a plaintiff asserts a cause of action that falls within a defendant's sovereign immunity defense, the tribunal does not lack personal jurisdiction over the defendant or subject matter jurisdiction over the defendant's claim. Instead, the tribunal must dismiss the claim because, as a matter of law, the defendant is immune from liability for the cause of action in question. Justice Wecht's conclusion that the availability of the sovereign immunity defense implicates a tribunal's jurisdiction is contrary to these well-established principles.

protections. This reliance on the General Assembly's silence, however, is misguided, as it reflects nothing more than the legislature's intention to cede to local control over the extension of protections against discrimination for additional categories of citizens. In declining to amend the PHRA, the legislators were well aware that local ordinances providing additional anti-discrimination protections existed in various political subdivisions throughout Pennsylvania, including in Philadelphia. If the General Assembly had any intention to preclude Commonwealth agencies from abiding by such protections in local ordinances, or to confer to the PHRC exclusive jurisdiction over Commonwealth agencies with respect to anti-discrimination matters, it certainly could have amended the PHRA to do so.[5] Instead, the General Assembly has not passed any legislation usurping the power of political subdivisions to enact and enforce anti-discrimination provisions beyond those set forth in the PHRA.

The only legislative intent that may be properly gleaned from SEPTA's grant of sovereign immunity is that the legislature intended for SEPTA to enjoy the recognized legal protections associated with a grant of sovereign immunity. Contrary to Justice Wecht's concerns about SEPTA's ability to provide transportation services if it is compelled to submit on occasion to the jurisdiction of the Philadelphia Commission, no serious conflict exists. The FPO provides that actions are instituted by the filing of a

---

[5] Other states have done so. *See, e.g.*, Ark. Code Ann. § 14-1-403 or A.C.A. § 14-1-403 ("A county, municipality, or other political subdivision of the state shall not adopt or enforce an ordinance, resolution, rule, or policy that creates a protected classification or prohibits discrimination on a basis not contained in state law."); Tenn. Code Ann. § 7-51-1802 or T.C.A. § 7-51-1802 ("No local government shall by ordinance, resolution, or any other means impose on or make applicable to any person an anti-discrimination practice, standard, definition, or provision that shall deviate from, modify, supplement, add to, change, or vary in any manner from … types of discrimination recognized by state law but only to the extent recognized by the state.").

complaint, to which the respondent files a written answer. Phila. Code § 9-1112-13. When a complaint is filed against SEPTA that includes claims for money damages or mandatory injunctive relief, SEPTA may assert its sovereign immunity in its answer – at which time all such claims must be immediately dismissed. For claims that do not seek money damages or mandatory injunctive relief, however, SEPTA's sovereign immunity provides no protection. With respect to these claims, the FPO provides that the Philadelphia Commission may perform an investigation, hold hearings, conduct mediations or conciliations, and order non-monetary relief, including the issuance of cease and desist orders to prohibit SEPTA from engaging in conduct that is unlawful under the FPO. Phila. Code §§ 9-1105-1118. In this regard, SEPTA is obliged to participate in these processes, including attendance at mediations and conciliations in furtherance of the relief sought, and compliance with investigative subpoenas issued by the Philadelphia Commission. Phila. Code §§ 9-1113-1116. Sovereign immunity provides no bar against SEPTA's involvement in these FPO proceedings, including no shield against cease and desist orders, administrative investigations, or mediations and conciliations. SEPTA likewise has no sovereign immunity protection against the costs and expenses of participation in such litigation, including its attorneys' fees and costs associated therewith.

Having concluded that SEPTA is not immune from all FPO litigation, the comparison of consequences resulting from subjecting SEPTA to the jurisdiction of the Philadelphia Commission, or, conversely, of exempting it from compliance with the FPO, weighs strongly in favor of allowing the Philadelphia Commission to exercise jurisdiction over SEPTA. The only consequence of subjecting SEPTA to the jurisdiction

of the Philadelphia Commission is that it places SEPTA and the Philadelphia Commission on equal footing in lawsuits seeking available relief. SEPTA has the right to due process in proceedings before the Philadelphia Commission, including the right to present a defense to all allegations of wrongdoing. SEPTA also has the right to seek judicial review from orders of the Philadelphia Commission to any court of competent jurisdiction within thirty days of their entry. Phila. Code §§ 9-1105-1119.

Moreover, subjecting SEPTA to the jurisdiction of the Philadelphia Commission does not interfere with its core transportation mission. SEPTA's core mission is not merely to provide public transportation. As explained hereinabove, while the General Assembly granted SEPTA sovereign immunity, it also waived that grant of immunity with respect to compliance with the anti-discrimination provisions of the PHRA. *See* supra at 2-3. Accordingly, legislative intent reflects that SEPTA's core mission is to **provide public transportation without engaging in discriminatory conduct**. Requiring SEPTA to comply with the FPO is thus entirely consistent with its core mission. In this regard, I cannot agree with the Concurrence's contention that it was the General Assembly's intent to preclude SEPTA from any participation in litigation of the type envisioned by the FPO. Such a contention amounts to an assertion that the General Assembly intended to require SEPTA to comply with some anti-discrimination laws (i.e., those in the PHRA relating to discrimination based upon, inter alia, race, color, religious creed, ancestry, age or sex, 43 P.S. § 956(a)), but to be free from any obligation to comply with other anti-discrimination laws (i.e., those in the FPO relating to discrimination based upon, inter alia, gender identity or sexual orientation, Phila. Code § 9-1103(1)). No language in any of the relevant legislation suggests any intent by the

General Assembly to permit SEPTA either to engage in the types of discrimination specified in the FPO or to avoid litigation in connection therewith. SEPTA has offered no basis on which to conclude that while it can fulfill its core public transportation mission in compliance with the PHRA (and incurring associated litigation costs), it would be unable to do so if required to comply with the incremental additional anti-discrimination provisions of the FPO.[6]

On the other hand, serious consequences result from holding that SEPTA is exempt from the FPO, as the interests of entire classes of individuals otherwise protected by the FPO will have no protection from various forms of discrimination by Philadelphia's largest transportation provider. The Concurrence's position that this consequence is substantially mitigated because Philadelphia can carry out the purpose of the FPO by "enforcing it against other individuals and entities," Concurring Op. (Wecht, J.) at 7, misses the mark. The aim of the FPO is not to protect some, but rather all, Philadelphians from the types of discrimination identified in the ordinance. Exempting SEPTA from the jurisdiction of the Philadelphia Commission and compliance with the FPO will interfere with the accomplishment of this purpose.

For these reasons, I dissent.

Justices Todd and Dougherty join this Dissenting Opinion.

---

[6] I likewise find unpersuasive the Concurrence's assertion that compliance with the FPO would interfere with SEPTA's core mission because the Philadelphia Commission could, hypothetically, assert a claim alleging discrimination on the basis that a neighborhood with a population of members of a protected class is underserved and then issue, as a remedy, a prohibitory injunction preventing SEPTA from re-routing buses or trains to or from that neighborhood. Concurring Op. (Wecht, J.) at 7-8. An order as hypothesized by the Concurrence, i.e., to correct existing underservice to a particular neighborhood by re-routing service would require a mandatory injunction and would be defeated by SEPTA's sovereign immunity, if asserted.